```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT
```

NUTRI-MEALS, LLC, et al          :
                                 :
v.                               :   CIV. NO. 3:08cv213(WWE)
                                 :
EYC GROUP, LTD., et al           :

### Ruling on Non-Party Joel Fuhrman, M.D.'s Motion for Protective Order Quashing Subpoena [Doc. #100]

Pending is Non-Party Joel Fuhrman, M.D.'s Motion for Protective Order Quashing Subpoena [Doc. #100]. The Court held oral argument on March 12, 2009 and after careful consideration **GRANTS** the motion.

### Background

This action arises out of an alleged "Partnership" and "Partnership Agreement" between Nutri-Meal, LLC ("Nutri-Meals"), AcuMarketing, LLC ("AcuMarketing") and Kevin Leville ("Mr. Leville") and at least one of the defendants. (Amended Complaint dated January 17, 2008, at ¶13).[1] Plaintiffs claim damages from this alleged partnership agreement between plaintiff Kevin Leville and defendant, Has Dosanjh, or between AcuMarketing, LLC/Nutri-Meals, LLC and EYC/EYC USA, Inc. (Id., ¶ 13).[2]

---

[1] Plaintiffs' complaint alleges breach of contract, breach of implied covenant of good faith and fair dealing, fraudulent misrepresentation, tortious interference with contract, misappropriation of trade secrets, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, unjust enrichment, quantum meruit, and violation of the Connecticut Unfair Trade Practices Act.

[2] Specifically, plaintiffs allege EYC Group breached contracts when it refused to employ Mr. Friedman and Mr. Bennetts on the terms upon which they previously agreed, and refused to transfer 10% of the equity in the defendant's companies to them.

Plaintiffs allege that the Partnership was engaged in food and nutrition and related consumer data business as well as the development and marketing of programs for supermarkets and consumer packaged good manufacturers that would increase sales for clients of the Partnership and that plaintiffs and defendants agreed to evenly split the profits arising out of the partnership.  (Id., ¶ 13).  As part of this Partnership, Tufts University's Friedman School of Nutrition Science and Policy ("Tufts") was engaged to perform research necessary to develop algorithms to score the nutritional value of food, recipes and meals.[3]  There is no written Partnership Agreement and defendants deny that a partnership existed.

Standard of Review

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P.26(b)(1).  Information that is reasonably calculated to lead to the discovery of admissible

---

[3] Mr. Leville worked with Tufts on the Tufts research until November 2005, when Tufts cancelled its contract with Mr. Leville.

evidence is considered relevant for the purposes of discovery. *See* <u>Daval Steel Prods. V. M/V Fakredine</u>, 951 F.2d 1357, 1367 (2d Cir. 1991); <u>Morse/Diesel, Inc. Fidelity & Deposit Co.</u>, 122 F.R.D. 447, 449 (S.D.N.Y. 1988).

<u>Subpoena for Dr. Furhman's Deposition</u>

Defendants wish to depose Dr. Fuhrman because they believe that he has a business relationship with plaintiff, Mr. Leville, including but not limited to a partnership concerning food and nutrition and related consumer data, similar to the business of the alleged Partnership.  On September 10, 2008, defendants' counsel issued and caused to be served a Notice of Deposition and Subpoena Duces Tecum commanding Dr. Fuhrman to appear for the taking of his deposition scheduled for October 17, 2008.  The Subpoena sought the production of copies of documents relating to plaintiffs, defendants, Roger Bennetts and Eric Friedman, as well as those business entities of plaintiff, Kevin Leville, from January 1, 2004 to the present.

Dr. Furhman claims not to have any information that relates to any claims or defenses in this case and that deposing him will not lead to the discovery of admissible evidence.  Dr. Furhman first met with Mr. Leville on August 14, 2006 and their business venture began in March, 2007, two years after the relevant time frame.[4]

---

[4] The plaintiff's complaint alleges that the Partnership began in September 2003 and that Mr. Leville continued working for the benefit of the Partnership until August 2005.

In support of defendants' contention that the deposition of Dr. Fuhrman will lead to admissible evidence, Mr. Dosanjh argues that Mr. Leville has offered a series of loosely connected events in an effort to show the Partnership at issue and that therefore Mr. Leville's experience entering into related partnerships and his understanding of the roles and responsibilities of the various individuals and/or entities which are parties to the partnership are relevant to the claims and defenses in this action.  Specifically, Mr. Dosanjh argues that the information sought is appropriate in understanding (1) the scope of the relationship and business between Dr. Furhman and Mr. Leville, and their respective related companies, to determine whether the alleged partnership should have been the contracting party with Dr. Furhman and/or his related company(s); and (2) Mr. Leville and Dr. Furhman's course of conduct in creating and working together as partners.  Mr. Dosanjh further argues that Dr. Furhman may have obtained information from Mr. Leville regarding the Partnership at issue in this case.

There is no evidence to support any allegation that the Tufts Research or any work product of the alleged Partnership gave rise to Mr. Leville's subsequent partnership with Dr. Furhman.  Mr. Leville asserts that the partnership with Dr. Furhman did not contemplate nutrition management delivered through supermarkets and did not use the Tufts Research, and Dr. Furhman states that he met with Mr. Leville to "discuss meal planning."   (Leville Aff. 4; Furhman Aff. 3).  Further, any

4

information pertaining to Mr. Leville's knowledge and understanding of partnerships arising from his partnership with Dr. Furhman is irrelevant since that partnership occurred subsequent to the alleged Partnership at issue. The Court finds that the information sought through deposing Dr. Furhman is appropriately sought from Mr. Leville himself first.[5]

Subpoenaed Documents

The subpoenaed documents relate to Mr. Leville's involvement in "Eat Right America", "EatRightAmerica.com", "Nutritional Excellence, LLC" and "Diseaseproof.com" as well as documents relating to plaintiffs, defendants, Eric Freidman and Roger Bennetts. There is no reason to believe that any of the responsive documents in Dr. Furhman's custody and control bear any relation the work product of the Partnership. "Eat Right America" was organized on May 18, 2006, and no longer operates. (Leville Aff. ¶3). "Nutritional Excellence" was organized by Mr. Leville, Dr. Furhman and others on March 30, 2007. (Furhman Aff. ¶4). "EatRightAmerica.com" is owned by Nutritional Excellence and used to sell Dr. Furhman's nutritional management products and programs.[6] (Id. ¶6). "Diseaseproof.com" is Dr. Furhman's

---

[5] Defendants have not yet taken the deposition of Mr. Leville.

[6] "Eat Right America" was a partnership formed between Mr. Leville and Yale from 2006 to 2007. The relationship between Mr. Leville and Yale was terminated, however Mr. Leville transferred this name to his new partnership with Dr. Furhman for use of the website.

blog which began in 2005 and is primarily run by one of Dr. Furhman's employees.  (Id. ¶8).  To the extent that Mr. Leville has documents responsive to defendant's request they are appropriately subpoenaed from him.

Accordingly, the Motion for Protective Order Quashing Subpoena [Doc. #100] is **GRANTED**.

This is not a recommended ruling.  This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

ENTERED at Bridgeport this 11th day of May 2009.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE